OPINION OF THE COURT
Diane Kiesel, J.
The defendant has filed a motion pursuant to CPL 190.50 to dismiss the indictment on the ground it was defective because a grand juror recognized the prosecutor and failed to disclose that fact. He also seeks permission to file further motions as necessary, pursuant to CPL 255.20. The People oppose defendant’s application, although they consent to the court’s in camera inspection of the grand jury minutes, a copy of which has been provided and reviewed.
The Facts
The defendant was arrested September 10, 2016 and charged in a felony complaint. His case was presented to the grand jury of Bronx County, E Panel, on September 16 at which time the defendant exercised his right to testify.[1] At approximately 5:00 p.m. that day the grand jury voted a true bill.
According to an affirmation submitted by the Assistant District Attorney (ADA) assigned to the case, it seems that after the grand jury voted she received that evening on social media, specifically via Facebook, a message that contained just a phone number. When she clicked on the image accompanying the phone number, she saw that the matching profile belonged to the foreperson of the E Panel that had heard the ADA’s presentation and voted the indictment. It was not until looking at his profile and the pictures that accompanied it that she recalled the foreperson as someone she knew a decade ago when she was a graduate student and working as a bartender. The foreperson was also a bartender, albeit at a different *772 establishment. They had limited social contact in the form of “a few conversations,” approximately “ten years ago.” She added: “I had not seen this person since I stopped working at that bar in the fall of 2006.” After receiving the message from him she did not respond and reported the contact to her Bureau Chief.
Following her visit to the Bureau Chief, the ADA disclosed the contact initiated by the grand juror to the defense counsel. The lawyers appeared before the grand jury empaneling judge to explain the problem. The judge refused to take any action, informing the parties it should be the subject of a subsequent motion to dismiss.
In a motion brought pursuant to CPL 190.50 defense counsel, while insisting he does not question the integrity of the Assistant District Attorney, nonetheless disputes her version of the facts and asserts the presentation was “impaired, prejudiced and defective” due to the familiarity of the grand jury foreperson with her. In contrast to the ADA’s affidavit, defense counsel implies that she spoke on the phone with the grand juror in question, although he is not entirely clear on that point. He wrote:
“[T]he assigned ADA was contacted via a FaceBook instant message and asked to contact one of her FaceBook friends on the telephone, which [she] did. When [the ADA] spoke with this individual, it turned out that one of the ADA’s personal Face-Book friends was one of the empaneled Grand Jurors.”[2]
The Law and its Application to the Facts
Although this is a motion brought pursuant to CPL 190.50, it is not a dispute about whether the defendant was denied his right to testify in the grand jury. The defendant was offered that opportunity and elected to testify. It is a motion pursuant to CPL 210.20 (1) (c), which permits a court to dismiss an indictment or any count due to defective proceedings within the meaning of CPL 210.35.
Pursuant to CPL 210.35 (5) a grand jury proceeding is defective if it “otherwise fails to conform to the requirements of *773 article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result.”
The statutory test for dismissing an indictment is “very precise and very high: ‘impairment of integrity’ of the Grand Jury process.” (People v Darby, 75 NY2d 449, 455 [1990].) The burden is on the defendant to demonstrate that the existence of defects impaired the integrity of the grand jury and gave rise to the possibility of prejudice in its determination to indict. (People v Wood, 291 AD2d 824 [4th Dept 2002], lv denied 98 NY2d 657 [2002].) Dismissal of an indictment is a “drastic remedy” and is limited to those instances where prosecutorial wrongdoing, fraudulent conduct or serious errors occur. (People v Serkiz, 17 AD3d 28, 30 [3d Dept 2005].)
The prosecutor always has an absolute duty to act fairly and to insure that justice is done. (People v Lazar, 51 Misc 2d 233 [Sup Ct, NY County 1966].) There is no assertion here that the prosecutor committed any wrongful or unethical act. It is the grand juror who recognized the prosecutor, not vice versa, and accordingly, should have made that fact known. The Grand Juror’s Handbook, provided to each sitting panelist in the State of New York, addresses this issue, offering advice as to what to do if a juror knows a witness or the accused. “A grand juror who recognizes a witness or the name of an accused person should immediately inform the Commissioner of Jurors staff or the grand jury warden or the District Attorney or assistant district attorney or the judge.” (New York State Unified Court System, Grand Juror’s Handbook at 12.) By parity of reasoning, this same advice would necessarily apply when a juror recognized a prosecutor or defense lawyer in the panel.
Neither party has presented any case directly on point. In a situation in upstate Cortland County where one of the grand jurors was married to one of three deputy sheriffs who investigated a suspicious fire and testified before her and the rest of the panel, the defendant’s indictment for arson was dismissed. In that case, the prosecutor knew of the conflict, conducted a voir dire of the juror with respect to her ability to be fair, got an equivocal answer and nonetheless went forward with the presentation. (People v Revette, 48 AD3d 886, 887-888 [3d Dept 2008].) Clearly, with such a close familial relationship and no promise from the juror that she could be fair and impartial, that was the appropriate result. But cases involving remote personal or familial relationships do not support dismissal. Thus, where a defendant alleged that a member of *774 the grand jury “might have had ill will toward him,” implying they were known to one another, the appellate court determined it was an insufficient reason to dismiss the indictment. (People v Wormuth, 35 AD2d 609, 609 [3d Dept 1970].) And, a grand juror who was the first cousin of the grandmother of the defendant’s wife was not disqualified from sitting on the panel that considered his case. (People v Briggs, 50 Misc 2d 1062, 1065 [Rensselaer County Ct 1966].)
The defendant’s complaint about the impact on the presentation of his case because one juror had a passing acquaintance with the ADA is vague and totally speculative. The acknowledged, unchallenged relationship between the ADA and the foreperson of the grand jury is simply too casual and too remote in time to have had any impact on the proceedings. Further, this court has examined the grand jury minutes in camera to determine their legal sufficiency and finds the evidence before the grand jury was sufficient to establish the crimes charged. The grand jury was properly instructed on the law and the proceedings were proper. Release of the minutes to the defendant is denied as unnecessary and the defendant’s motion to dismiss is denied.
The defendant may make further motions pursuant to CPL 255.20 for good cause shown.

. There was some skirmishing with regard to the defendant’s presence in the grand jury. Initial defense counsel waived the time constraints of CPL 180.80 to obtain a pre-indictment offer from the People for his client. That strategy apparently did not sit well with the defendant who, once he learned of it, demanded new counsel. His application was granted, the first lawyer was relieved and new counsel was appointed. New counsel revoked the prior lawyer’s waiver and asked that his client be permitted to testily before the grand jury.

. It is unclear whether counsel is alleging the ADA spoke directly with the foreperson or with someone else who informed her that one of her other Facebook friends was the foreperson. Be that as it may, this factual dispute is of no moment; even assuming arguendo she did have direct phone contact with the grand jury foreperson, it would have been after the vote on the indictment and thus would have no bearing on this decision.